[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Frank Verzillo, appeals from a decision of the defendant, the planning and zoning commission of the town of Stonington (commission), denying his subdivision application. The commission acted pursuant to General Statutes § 8-26. The plaintiff appeals pursuant to General Statutes § 8-8.
 Procedural History
Notice of the commission's denial of the subdivision application was published in the New London Day and the Westerly, Rhode Island, Sun on July 12, 2000. (Return of Record [ROR], Item 51.) The plaintiff served the appeal on the chairperson of the commission and the Stonington town clerk on July 26, 2000. (Sheriff's Return.) The appeal was filed with the clerk of the Superior Court on August 4, 2000. The commission filed an answer and the return of record on November 1, 2000 and filed an amendment to the return or record on January 19, 2001. The plaintiff and the commission filed briefs on November 30, 2000 and January 8, 2001 respectively. The appeal was heard by the court, Robaina, J., on April 2, 2001.
On January 14, 2000, the plaintiff filed an application to subdivide certain property in the Town of Stonington. (ROR, Item A.) The property is bounded on the south by Burdick Lane and on the east by Moss Street. (ROR, Item A.) Burdick Lane is approximately 950 feet long (ROR, Item CT Page 11293 A), and consists of a 33 foot right-of-way including a paved width of 18 to 20 feet. (ROR, Item 45.) It runs in an east-west direction, extending from the northern terminus of Johnson Street in the west to the southern terminus of Moss Street in the east. (ROR, Item A.) The subject property occupies the full length of the northern side of Burdick Lane. (ROR, Item A.)
In his original application, the plaintiff proposed subdividing the property into eleven parcels, with parcel one fronting on the westerly side of Moss Street, parcels three through eleven fronting on the northerly side of Burdick Lane, and parcel two occupying the corner at the intersection of Burdick and Moss. (ROR, Item A.) The application also provided for the dedication of approximately eight and one-half feet of property to bring the Burdick Lane right-of-way to a total of approximately forty-one and one-half feet. (ROR, Item A.) In addition, the plaintiff proposed to extend Burdick Lane in a westerly direction beyond Johnson Street and the plaintiff's property. The proposed extension would be in the form of a gravel roadway for the purpose of providing additional emergency access to the area. (ROR, Items A; 51, p. 8.)
The public hearing on the application took place during three meetings of the commission, held on March 21, 2000, April 18, 2000, and May 4, 2000 respectively. During the public hearing, the plaintiff submitted a modified application in response to certain concerns that were apparently raised in response to a preliminary application in August, 1999. (ROR, Items X; 51, p. 36.) The modified application reduces the number of lots from eleven to ten, replacing the previous lot number two with a detention pond. (ROR, Item X.) The modified application also provides for the reservation of a twenty foot strip at the far western edge of the property for the purpose of a possible future extension of Johnson Street to Fellows Street, which runs in a northsouth direction and presently terminates some distance to the northwest of the subject property. (ROR, Items X; 51, p. 52.)
On July 6, 2000, the commission voted to deny the subdivision application. (ROR, Item 52.) In its letter notifying the plaintiff of the denial, the commission gave the following reasons for its decision:
 "The application was denied because of the safety issues and that the inability to create access was brought about by the applicant.
 "1. It's a safety hazard without a second means of egress. The additional houses will add to an existing . . . safety problem. The commission questions who would maintain the gravel emergency egress which was CT Page 11294 proposed. There is no way the planning and zoning commission can insure that Burdick Lane would ever be widened and improved if the subdivision is approved.
 "2. The commission notes that prior to the division of the original lot and conveyance to Mrs. Verzillo it would have been possible to bring any of those roads (Fellows, William, Courtland) through and it appears that the purpose of choosing the meandering division line that was selected was done so to preclude either parcel from being required to bring one of these roads through. And that any hardship as to the ability to bring in access is self created by the act of the division of the property and the way the line was drawn."
(ROR, Item 52.)
On appeal, the plaintiff argues that its subdivision application conforms to the requirements of the Stonington subdivision regulations and that the commission therefore improperly denied the application. Specifically, the plaintiff argues that the commission improperly denied the application based on the inadequate width of Burdick Lane, because the application provides for the dedication of sufficient additional land to satisfy the width requirements contained in the subdivision regulations. The plaintiff further argues that the safety concerns expressed by the commission are inadequate to justify denial of the plaintiff's application, because the allegedly unsafe condition already exists and therefore will not be caused by the proposed subdivision.
 Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal [under General Statutes § 8-8]." Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184, 192, 676 A.2d 831 (1996). "The jurisdictional requirement of aggrievement serves both practical and functional purposes in assuring that only those parties with genuine and legitimate interests are afforded an opportunity to appeal. . . . Aggrievement falls within two broad categories, classical and statutory. . . . A party has been classically aggrieved if it successfully demonstrates a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as the concern of all members of the community as a whole, and successfully establishes that this specific, personal and legal interest has been specially and injuriously affected by the decision." (Citation omitted.) Zoning Board of AopealsCT Page 11295v. Planning Zoning Commission, 27 Conn. App. 297, 300-301, 605 A.2d 885
(1992).
"Statutory aggrievement exists by legislative fiat, which grants appellants standing by virtue of a particular legislation, rather than by judicial analysis of the particular facts of the case." Id., 301. In an appeal from a municipal planning commission pursuant to General Statutes § 8-8, "aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a) (1).
In the present case, the plaintiff has alleged that, as the owner of the property subject to the subdivision application, he is aggrieved by the commission's denial of the application. (Appeal, par. 4.) At the hearing before this court, the plaintiff submitted deeds demonstrating that he is the owner of the subject property. (Plaintiff's exhibits 1 and 2.) As the owner of the property subject to the commission's decision, he is both statutorily aggrieved under General Statutes § 8-8 (a)(1) and classically aggrieved. See Quarry Knoll II Corp. v. Planning ZoningCommission, 256 Conn. 674, 704, ___ A.2d ___ (2001).
 Timeliness of the Appeal and Service
An appeal from a decision of a municipal planning commission must be commenced within fifteen days of the date that notice of the commission's decision is published. General Statutes § 8-8 (b). In the present case, the notice of decision was published in the New London Day and Westerly Sun on July 12, 2000 and the sheriff's return indicates that service was made on the commission on July 26, 2000. The commission was therefore timely served in compliance with § 8-8 (b).
 Standard of Review
"The limited scope of review in subdivision appeals is well established. It is axiomatic that a planning commission, in passing on a [subdivision] application, acts in an administrative capacity and is limited to determining whether the plan complies with the applicable regulations. . . . The commission is entrusted with the function of interpreting and applying its zoning regulations. . . . The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts. . . . The trial court can sustain the [plaintiff's] appeal only upon a determination that the decision of the commission was unreasonable, arbitrary or illegal. . . . It must not substitute its judgment for that of the zoning commission and must not disturb decisions of local CT Page 11296 commissions as long as honest judgment has been reasonably and fairly exercised." (Citations omitted; internal quotation marks omitted.) GormanConstruction Co. v. Planning Zoning Commission, 35 Conn. App. 191,195-96, 644 A.2d 964 (1994).
 Discussion
The plaintiff in the present case argues that his subdivision application conforms to the regulations of the town of Stonington and that the commission therefore had no discretion or choice but to approve it. The plaintiff further argues that the commission improperly denied the application because of its failure to provide for off-site improvements desired by the commission.
"[A] municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency. . . . The planning commission, acting in its administrative capacity, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. . . . If it does not conform as required, the plan may be disapproved." Reed v. Planning Zoning Commission,208 Conn. 431, 433, 544 A.2d 1213 (1988). If the regulations and statutes do not address a particular issue, the commission exceeds its authority when it denies a subdivision application on the basis of that issue. Id., 435-36.
The first reason given by the commission for its denial of the plaintiff's application is that "[i]t's a safety hazard without a second means of egress. The additional houses will add to an existing . . . safety problem. The commission questions who would maintain the gravel emergency egress which was proposed. There is no way the planning and zoning commission can insure that Burdick Lane would ever be widened and improved if the subdivision is approved." This paragraph actually sets forth several reasons, and the court will address each to determine whether it was a proper ground for the commission to deny the plaintiff's application.
The major disagreement between the parties concerns the street width requirement contained in the subdivision regulations. The commission contends that the application was properly denied because of the plaintiff's failure to provide for the widening of Burdick Lane. The subdivision regulations require a residential street to have a fifty foot wide right-of-way. Town of Stonington Subdivision Regs., ch. 6, § 2 (F). In addition, they provide that "[w]here a subdivision abuts or contains an existing street which does not comply with the specified CT Page 11297 width requirements, the subdivider shall dedicate the necessary area to the Town for street widening and show such widening on the Final Subdivision Plan." Stonington Subdivision Regs., c. 6, § 2(F). As stated above, Burdick Lane presently has a thirty-three foot right-of-way and the plaintiff's subdivision plan provides for the dedication of eight and one-half additional feet, or half of the difference between the required width and the present width.
The commission argues that the dedication proposed by the plaintiff is inadequate, because the regulations require him to dedicate the full amount necessary to bring the right-of-way to the required width. The plaintiff does not dispute the fact that under our appellate cases, a planning commission may require a subdivision applicant to dedicate land for the purpose of widening an abutting road. See Reed v. Planning Zoning Commission, supra, 208 Conn. 431; Weatherly v. Town Plan ZoningCommission, 23 Conn. App. 115, 579 A.2d 94 (1990). The plaintiff argues, however, that in the present situation, in which the landowner proposes to subdivide land abutting one side of an existing street, the landowner can only reasonably be required to dedicate sufficient property to bring that side of the road into conformity with the regulations. In other words, he argues that the regulation may only be reasonably read to require him to dedicate enough land so that the Burdick Lane right-of-way measures 25 feet from the present center line of the road. The court agrees with the plaintiff.
"An ordinance is a legislative enactment of a municipality. . . . An ordinance is subject to the same canons of construction as are applied to state statutes." (Citations omitted.) Blue Sky Bar, Inc. v. Stratford,203 Conn. 14, 19-20 n. 7, 523 A.2d 467 (1987). "We are required to construe a statute in a manner that will not thwart [the legislature's] intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. . . . If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable." (Internal quotation marks omitted.) State v. Ehlers, 252 Conn. 579, 593,750 A.2d 1079 (2000).
The construction placed on the width regulation by the commission is unreasonable because it would lead to absurd results and thwart the regulation's purpose of providing "an adequate and convenient system for present and prospective traffic needs." See Stonington Subdivision Regs., c. 1, § A. The following hypothetical situation illustrates why this is so. Suppose landowners A and B both own property abutting the same road, which runs in an east-west direction and has a twenty-five foot right-of-way. A's property is on the northern side of the road and B's CT Page 11298 property is located on the southern side diagonally from A's property, so that the two parcels abut different but contiguous stretches of the road. Both A and B submit subdivision applications. Both are required to dedicate twenty-five feet of land to bring their respective portions of the right-of-way into conformity with the fifty-foot requirement. The land dedicated by A is added to the northern side of the right-of-way, but the land dedicated by B is added to the southern side. As a result, although the two sections of the road both conform to the width requirements, they are not properly aligned. The municipality would be left with a bizarre situation in which the right-of-way abruptly shifts by twenty-five feet. Furthermore, at the point where the two sections of the right-of-way meet, it would narrow to a width of twenty-five feet, thus frustrating the basic purpose of the regulation, i.e., the widening of the road. Such an arrangement could not be called "an adequate and convenient system."
By contrast, the plaintiff's interpretation of the regulation would achieve the goal of allowing the widening of streets by preserving the existing center line and widening from the center out in both directions. Furthermore, the plaintiff's interpretation is more equitable, in that it would allocate the burden of providing land for the widening to roads to landowners on both sides of a road, rather than placing the entire burden on one landowner. The court finds the plaintiff's reading of the regulation to be the only reasonable interpretation. Consequently, because the plaintiff in the present case owns only the land on the northern side of Burdick Street, the regulations require him to dedicate only his share of the additional seventeen feet needed to bring the right-of-way to the required width. This is precisely what the plaintiff's subdivision plan does in providing for the dedication of eight and one-half feet of land. The plan therefore conforms to the width requirements of the Stonington Subdivision Regs., c. 6, § 2(A).
The commission nevertheless maintains that it justifiably denied the application on the ground that the narrowness of Burdick Lane poses health and safety risks. According to the commission, its authorization to consider such safety and health concerns is found in the subdivision regulations of the town of Stonington, c. 1, par. A, which provides that "land to be subdivided shall be of such character that it can be used for building purposes without danger to health and safety. . . ."
In Reed v. Planning Zoning Commission, supra, 208 Conn. 431, our Supreme Court considered and rejected the precise argument advanced by the commission. In that case, the plaintiff's subdivision application was denied on the ground that the road abutted by the proposed subdivision was "inadequate to provide safe access and egress to the proposed lots CT Page 11299 for either residents or emergency vehicles." (Internal quotation marks omitted.) Id., 432. The planning and zoning commission argued that the denial was supported by section 2.0 of the Chester subdivision regulations, which provides in part: "All land to be subdivided or re-subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety." Id, 434 n. 2. The Supreme Court concluded that such language does not address the adequacy of existing town roads, stating: "We have reviewed [Section 2.0] and are unable to discern any authority, express or implied, for the action of the commission. Section 2.0 deals with the character of the land that `can be used for building purposes.' . . . Existing town roads are not addressed in [section 2.0]." Id., 435. Because the regulation in the present case is substantially identical to the regulation in Reed it is also inadequate to support the denial of a subdivision application on the ground that an existing road is inadequate.
Furthermore, the commission lacked an adequate factual basis for concluding that the plaintiff's application should be rejected because of safety concerns. There was substantial evidence presented at the public hearing regarding safety concerns. The concerns, however, related primarily to the present condition of the neighborhood, and, other than speculation that more cars would be parked along Burdick Lane, no evidence was presented showing that the plaintiff's proposed subdivision would create or significantly exacerbate a safety hazard. On the contrary, the statements made to the commission regarding safety issues indicated a desire to have the plaintiff remedy existing safety issues [ROR, Item 58, pp. 21-24, 31-32] as well as concerns about the possible impact of additional future development unrelated to the present application. [ROR, Item 58, pp. 33-34.]
Even the commission's brief supports the conclusion that the commission's concerns relate to existing safety problems rather than issues that would arise as a result of the proposed subdivision. In its brief, the commission summarizes what it claims is sufficient evidence that the subdivision would create health and safety issues: "There was evidence that the road is extremely narrow with blind spots, that it is not wide enough for current traffic conditions, and that the road only has one means of ingress and egress which would severely jeopardize emergency vehicles accessing the subject property." This statement supports the conclusion that the commission's safety concerns involve the present condition of the roads, rather than a condition that would be caused by the subdivision. The commission lacked a factual basis upon which to conclude that general safety concerns justified the denial of the plaintiff's application.
The court will next address the commission's claim that the plaintiff's CT Page 11300 application did not provide for "a second means of egress." This conclusion is not supported by the record. Contrary to the commission's assertion, the plaintiff's application has at all times contemplated the extension of Burdick Street as a gravel emergency egress. (ROR, Item A.) In fact, the commission contradicts itself on this point when in the very next sentence of the notice of decision it expresses concern regarding "who would maintain the gravel emergency egress which was proposed." Furthermore, even assuming that the plan fails to provide for a second means of egress, the commission has not cited to, and the court has been unable to identify, any subdivision regulation requiring the creation or maintenance of such a second means of egress. As discussed above, the general language of chapter 1, paragraph A of the Stonington subdivision regulations relating to the suitability of land "for building purposes" is inadequate to raise such concerns. The commission's conclusion that the application is deficient in failing to provide a second means of egress is unreasonable and cannot serve as a ground for affirming the denial of the application. The first paragraph of the commission's notice of decision therefore contains no valid reasons for the denial of the application.
The second paragraph of the notice of decision states: "The commission notes that prior to the division of the original lot and conveyance to Mrs. Verzillo it would have been possible to bring any of those roads (Fellows, William, Courtland) through and it appears that the purpose of choosing the meandering division line that was selected was done so to preclude either parcel from being required to bring one of these roads through. And that any hardship as to the ability to bring in access is self created by the act of the division of the property and the way the line was drawn." The commission has not cited any authority that permits a planning commission to consider such factors in evaluating a subdivision application. The court therefore concludes that the commission's action, in denying the application based on a previous conveyance of property adjacent to the subject property, was unreasonable.
 Conclusion
The plaintiff's subdivision application provided for the dedication of sufficient land for the widening of Burdick Lane under the requirements of the Stonington subdivision regulations. Furthermore, the other reasons given by the commission for denying the plaintiff's application have no basis in the regulations. The plaintiff's application complies with the town's subdivision regulations and therefore should have been approved.
For the reasons stated above, the plaintiff's appeal is sustained and the commission is ordered to approve the plaintiff's division application. CT Page 11301
Robaina, J.